**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| **ERIC WELCH and SITTICHOK WEERAPUNYANONT,** ***on behalf of themselves and all those similarly situated,*** | ) | |
| **Plaintiffs,** | ) | **<u>CLASS ACTION COMPLAINT</u>** |
| **v.** | ) | **Civil Action No.:** 3:26cv47 |
| **CHADWICK DOTSON, DAVID ROBINSON, JEREMIAH FITZ, JR., JAMES PARKS, and DONNA SHIFLETT,** ***in their individual capacities*****,** | ) | |
| **Defendants.** | | |

## INTRODUCTION

1. This case challenges the illegal and unconstitutional over-detention of people incarcerated in the custody of the Virginia Department of Corrections ("VDOC") and to whom VDOC denied earned sentence credits in violation of the statutory mandate and intent of Virginia's earned sentence credit program (the "Program"), codified at Virginia Code § 53.1-202.2 *et seq*.

2. The Program entitles people convicted of felonies and sentenced to more than one year of incarceration to earn an earlier release through good behavior and participation in programs and employment.

3. Pursuant to the unambiguous text of the operative statute, people who are eligible to earn sentence credits should begin accruing them upon incarceration following the entry of a final order of conviction. However, contrary to the clear statutory language, VDOC has

established an arbitrary policy by which people otherwise eligible for the Program are unable to earn sentence credits at the full rate until their "custody responsibility date" ("CRD"). This date appears nowhere in the statute, is undefined in the Virginia Code, and bears no relation to the sentencing date or physical location of the incarcerated person. And, in violation of the statutory mandate for Program eligibility, it can be anywhere from days to months later than the date on which the incarcerated person has become eligible to earn sentence credits under the statute.

4. This arbitrary practice denies eligible people the benefit of sentence credits to which they are statutorily entitled and has resulted in the unconstitutional confinement of hundreds of Virginians for weeks or months after they should have been released to reunite with their loved ones and begin reintegrating into society.

5. Plaintiffs Welch and Weerapunyanont are two such individuals who, having now completed their sentences, bring this action on behalf of themselves and others similarly situated, under 42 U.S.C. § 1983 for violations of their Fourteenth Amendment rights under the United States Constitution against Defendant VDOC officials in their individual capacities, who are responsible for the implementation of the Program, including through the computation of time for all prisoners in VDOC custody.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this matter under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) because the action seeks to remedy violations of the Fourteenth Amendment under 42 U.S.C. § 1983.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims occurred within this District. Specifically, VDOC's calculation of the Plaintiffs' sentences occurred at its headquarters in Richmond, Virginia.

## PARTIES

8. Plaintiff Eric Welch was previously incarcerated in the custody of VDOC after being convicted of a felony and sentenced to a term of incarceration for more than one year, making him eligible for the Program during his incarceration. Defendants denied Mr. Welch the sentence credits to which he was entitled during a period of about seven months, resulting in over-confinement of approximately two months. Mr. Welch was released from VDOC custody on July 16, 2024.

9. Plaintiff Sittichok Weerapunyanont was previously incarcerated in the custody of VDOC after being convicted of a felony and sentenced to a term of incarceration for more than one year, making him eligible for the Program during his incarceration. Defendants denied Mr. Weerapunyanont the sentence credits to which he was entitled during a period of about six months, resulting in over-confinement of approximately two months. Mr. Weerapunyanont was released from VDOC custody on February 27, 2025.

10. Defendant Chadwick Dotson was the Director of VDOC from September 14, 2023 to January 16, 2026, and is named in his individual capacity. During his tenure, Director Dotson was ultimately responsible for all of VDOC's policies and procedures, including those related to the Program. Defendant Dotson made final, agency-wide decisions on how to administer the statutorily mandated Program.

11. Defendant David Robinson is the Chief Deputy Director for VDOC. He formerly served as the Chief of Corrections Operations for VDOC. He oversees the Corrections Operations Administrator. He is listed as the "Signatory" on VDOC's Operating Procedures 830.3 and 830.4 governing the implementation of the Program. He is named in his individual capacity.

12. Defendant Jeremiah Fitz, Jr. is the Corrections Operations Administrator for

VDOC. He oversees the Inmate Management Services office. He is listed as the "Reviewer" on VDOC's Operating Procedures 830.3 and 830.4 governing the implementation of the Program. He is named in his individual capacity.

13. Defendant James Parks is the Director of Inmate Management Services for VDOC. He oversees the Court and Legal Services Section ("Court and Legal"). He is listed as the "Content Owner" on VDOC's Operating Procedures 830.3 and 830.4 governing the implementation of the Program. He is named in his individual capacity.

14. Defendant Donna Shiflett is the Manager of VDOC's Court and Legal Services Section, which is the office responsible for computing an incarcerated person's sentence(s) and projecting their anticipated discretionary parole eligibility date, mandatory parole release date, and good time release date. Defendant Shiflett is responsible for reviewing and responding to inquiries from incarcerated people and their families regarding the computation of their sentences, including supervising other Court and Legal staff who review and respond to such inquiries. She is named in her individual capacity.

15. Collectively, Defendants are responsible for the creation, approval, implementation, and oversight of VDOC's policies and practices governing the calculation of sentences, including earned sentence credits.

## FACTS

16. Virginia law creates an earned sentence credit program whereby people in VDOC custody are eligible for sentence credits for good behavior and program participation while in custody. The statute defines "Eligibility for earned sentence credits" as follows:

> Every person who is convicted of a felony offense committed on or after January 1, 1995, and who is sentenced to serve a term of incarceration in a state or local correctional facility shall be eligible to earn sentence credits . . . . **Such eligibility shall commence upon the person's incarceration in any correctional facility**

> **following entry of a final order of conviction by the committing court**. . . . One earned sentence credit shall equal a deduction of one day from a person's term of incarceration.

Va. Code Ann. § 53.1-202.2(A) (emphasis added).

17. The language of the statute is mandatory; persons who meet the statutory criteria "shall be eligible" for credits, and their eligibility "shall commence" on the statutorily prescribed date.[1]

18. Prior to July 1, 2022, people in VDOC custody could earn a maximum of 4.5 sentence credits for every 30 days served. Va. Code Ann. § 53.1-202.3 (effective until July 1, 2022). In 2020, Virginia's General Assembly amended the earned sentence credit program to expand the number of credits that could be earned towards many sentences. 2020 Va. Acts Spec. Sess. I, chs. 50, 52. That law took effect on July 1, 2022.

19. The General Assembly provided that the expanded sentence credits "shall apply retroactively" to a person's "entire sentence." 2020 Va. Acts Spec. Sess. I, chs. 50, 52.

20. Sentences for convictions that are explicitly exempted from the new system by the statute are referred to internally by VDOC as "ESC-1" sentences. Sentences for all other convictions which are not specifically excluded from the new program, and are therefore eligible for expanded credits, are "ESC-2" sentences. This case is only about VDOC's execution of ESC-2 sentences; ESC-1 sentences are not at issue.

---

[1] The phrase "any correctional facility" in § 53.1-202.2(A) encompasses both state facilities and local or regional jails. "State correctional facility" is defined as "any correctional center or correctional field unit used for the incarceration of adult offenders established and operated by the Department of Corrections, or operated pursuant to the Corrections Private Services Act (§ 53.1-261 et seq.)." Va. Code Ann. § 53.1-1. "Local correctional facility" is defined as "any jail, jail farm or other place used for the detention or incarceration of adult offenders, excluding a lock-up, which is owned, maintained, or operated by any political subdivision or combination of political subdivisions of the Commonwealth." Va. Code Ann. § 53.1-1.

21. The General Assembly has provided that for ESC-2 sentences, "sentence credits *shall be awarded and calculated*" using a specified classification system. Va. Code Ann. § 53.1-202.3(B) (emphasis added).

22. The mandatory language for when ESC-2 credits must begin to be awarded, Va. Code Ann. § 53.1-202.2(A), and the mandatory language for how they must be calculated, Va. Code Ann. § 53.2-202.3(B), leave VDOC no discretion over when to begin awarding earned sentence credits on ESC-2 sentences or how many credits to award.

23. Section 53.1-202.3(B) establishes a four-level classification system for people serving ESC-2 sentences in any correctional facility. Individuals are assigned to a level based on their participation in assigned programming and number of disciplinary infractions. At Level I, people earn 15 sentence credits for every 30 days served; at Level II, people earn 7.5 days for every 30 days served; at Level III, people earn 3.5 days per 30 days served; and at Level IV, people do not earn any sentence credits. *See* Va. Code Ann. § 53.1-202.3(B).

24. VDOC has adopted operating procedures that set out the Department's policies and procedures to implement the Program.[2]

25. Under those operating procedures, people serving ESC-2 sentences do not begin to earn sentence credits at the rates established in § 53.1-202.3(B) until their "custody responsibility date" ("CRD"), at which point VDOC deems them to be "classified" and automatically assigns them to Class Level 1, allowing them to earn the maximum possible number

[2] Operating Procedure 830.3, "Good Time Awards," July 1, 2022, amended April 17, 2025 (hereinafter "OP830.3"), available at https://vadoc.virginia.gov/files/operating-procedures/800/vadoc-op-830-3.pdf; Operating Procedure 830.4, "Good Time Awards for State Inmates in Local Jails," July 1, 2022, amended July 1, 2024 (hereinafter "OP830.4"), available at https://vadoc.virginia.gov/files/operating-procedures/800/vadoc-op-830-4.pdf.

of sentence credits under the Program. OP830.3 at 14. Between their incarceration following conviction and their CRD, the operating procedures consider people to be "unclassified inmates."

26. The statutes establishing the Program do not use or define the terms "custody responsibility date" or "unclassified inmate." Neither statute nor policy explains how VDOC determines a person's CRD. In practice, it appears that the CRD is the date on which VDOC's Court and Legal Office calculates the length of a person's sentence and their projected release date.[3]

27. VDOC operating procedures make clear that people serving felony sentences in either a local or regional jail or a VDOC facility are classified as Class Level 1 as of their CRD and thereby begin to earn full sentence credits under the Program. OP830.3 at 3; OP830.4 at 7.

28. Despite being statutorily mandated by Va. Code Ann. §§ 53.1-202.2(A) and 53.1-202.3(B) to award sentence credits for ESC-2 sentences beginning on the date of incarceration after entry of a final order of conviction, VDOC's operating procedure provides that between that date and one's CRD, unclassified individuals may earn sentence credits only "at the rate of … 2.25 days for each 30 days served on sentences under ESC-1 and ESC-2." OP830.3 at 14; *see also* OP830.4 at 7-8.

29. The statutes establishing the Program do not authorize a different rate at which sentence credits may be earned prior to "classification" by VDOC. This is an invention of VDOC, imposed arbitrarily and in violation of the statute.

---

[3] Although the exact procedures by which VDOC's Court and Legal section calculates each prisoner's projected good time release date ("GTRD") are not public, in general, the GTRD is calculated by taking the total active sentence imposed by the court, subtracting any jail credits (including time served prior to the CRD and any good time credits earned while in the jail), and then subtracting the maximum number of sentence credits that may be earned on the difference. From that date, 28-30 adjusted discharge days are then subtracted, resulting in the GTRD.

30. Thus, VDOC does not allocate full earned sentence credits to people who have been convicted, sentenced, and incarcerated, and are therefore eligible to earn full sentence credits, until VDOC sets their CRD. If VDOC properly calculated the date on which ESC eligibility begins, people would have an opportunity to earn more credits over their term of incarceration, as the legislature commanded.[4]

31. VDOC's policy of failing to award earned sentence credits at the statutorily mandated rates after an individual becomes eligible for them often results in the over-detention of individuals—sometimes for months—because they have been denied sentence credits that they earned and are entitled to.

32. Defendants are responsible for implementing the Program pursuant to the unambiguous language of Va. Code Ann. §§ 53.1-202.2(A) and 53.1-202.3(B). Instead of carrying out these responsibilities, Defendants have implemented the Program in a way that is contrary to the statutes' plain language.

33. Defendants know and have known that their implementation of the Program created a risk that people in VDOC custody would be over-detained, and Defendants recklessly disregarded that risk.

34. Plaintiffs, as well as other similarly situated incarcerated individuals and their loved ones, have submitted complaints, grievances,[5] and letters, and made phone calls to the Court

---

[4] Earned sentence credits may be forfeited as a penalty for disciplinary infractions, VDOC Operating Procedure 861.1 at 28, or may be earned at lower rates based on one's class level, *supra*. Thus, although the number of credits that a person may earn is established by statute, the number of credits that people actually earn over the course of their sentence is not guaranteed but rather depends on their conduct.

[5] VDOC considers complaints regarding the calculation of sentences to be "non-grieveable," rejects grievances that relate to the calculation of sentences, and instructs individuals to write to Court and Legal. While at some facilities, a specific request form to write to Court and Legal may

and Legal office raising this issue.

35. For example, on July 11, 2023, one individual wrote a letter to Court and Legal asserting that he was entitled to have earned 15 sentence credits for every 30 days served, instead of the 2.25 credits that he earned up until his CRD. Court and Legal responded that while he was currently earning 15 days for every 30 served, he was only entitled to earn 2.25 days until his CRD.

36. On May 18, 2024, an individual incarcerated at Haynesville Correctional Unit wrote a letter to Defendant Dotson and Court and Legal requesting that he receive earned sentence credits from the date of his incarceration following the entry of a final order of conviction, rather than his CRD, pointing to the mandatory language of Va. Code Ann. § 53.1-202.2. He also filed a petition for Writ of Habeas Corpus in the Supreme Court of Virginia on May 20, 2024, raising this issue. That petition was dismissed without a resolution on the merits.

37. In August 2024, an individual held at Riverside Regional Jail who was eligible for ESC-2 credits, but for whom VDOC had yet to set a CRD, repeatedly contacted the Court and Legal office himself and through his fiancée, to request that Court and Legal begin awarding him sentence credits as of the date of his incarceration following the entry of a final order of conviction. VDOC failed to do so and began awarding him sentence credits only as of his CRD.

38. Upon information and belief, from July 1, 2022 to the present, numerous other individuals—in addition to Plaintiffs Welch and Weerapunyanont, *see infra* ¶¶ 54-83—contacted Court and Legal complaining that they should be awarded ESC-2 credits prior to their CRD, because the General Assembly specified that such credits must be applied to a person's "entire

---

be available, Court and Legal has not established any formal complaint or investigation mechanism or pathway to appeal a decision or response to a written inquiry.

sentence." *See supra* ¶ 19.

39. Defendants failed to take any action to remedy their violations of the rights of incarcerated people, including Plaintiffs.

40. Defendants' actions and failure to remedy the violations of Plaintiffs' rights are part of a pattern in which VDOC, because of a policy disagreement with the 2020 amendments to the Program, has repeatedly denied sentence credits to individuals in its custody who are entitled to such credits in clear violation of the plain text of the law.

41. This pattern began in the immediate aftermath of the passage of the 2020 amendments. After the passage of the amendments but before their effective date, Attorney General Mark R. Herring released an Opinion in response to questions from Harold Clarke, then-Director of VDOC, regarding the interpretation and application of Va. Code Ann. § 53.1-202.3(A). Va. Off. Att'y Gen. Op. No. 21-068 (Dec. 21, 2021), 2021 WL 6112902 at *1. The Opinion primarily addressed which offenses were disqualified from earning expanded earned sentence credits, and concluded that certain offenses, including inchoate offenses, were not excluded from ESC-2 credits. Attorney General Herring concluded that most inchoate offenses were eligible for ESC-2 credits.

42. After a change in administration, including the election of a new Attorney General, VDOC took the extraordinary step of requesting from Attorney General Miyares a reconsideration of the exact same questions that Attorney General Herring had already answered. On April 13, 2022, Attorney General Miyares issued a new opinion, which differed from the Herring Opinion in significant parts, including reaching the opposite conclusion from the Herring Opinion on whether the inchoate offenses were eligible for ESC-2 credits. Va. Off. Att'y Gen. Op. No. 22-008 (Apr. 13, 2022), 2022 WL 1178995 at *1. In a footnote, Attorney General Miyares noted that

he had voted against the amendments to the Program while a member of the General Assembly. *Id.* at *1 n.2.

43. In July 2023, the Supreme Court of Virginia held that one aspect of VDOC's interpretation of the statute—denying ESC-2 credits to individuals who were serving sentences for "attempted aggregated murder" even though that offense is not on the statutory list of offenses excluded from ESC-2 credits—was contrary to the plain language of the law. *See Prease v. Clarke*, 302 Va. 376, 383 (2023). The Court ordered Mr. Prease's immediate release.

44. Responding to the decision, former Attorney General Jason Miyares stated that he was "disappointed with the Supreme Court's decision [in *Prease v. Clarke*], but it is the law and we will comply with it. The Democrats forced through this dangerous legislation in 2020." "I will work with the Governor and the leaders of the General Assembly to fix this problem that the radical left created before it gets any worse."[6]

45. Despite Miyares' assertion that the state would comply with the Virginia Supreme Court's ruling in *Prease v. Clarke*, VDOC did not immediately award enhanced sentence credits to all others in its custody serving sentences for offenses not included in the statutory list of offenses ineligible for ESC-2 credits.

46. In November 2023, Leslie Puryear, an individual in VDOC custody who was being denied ESC-2 credits even though the offense for which he was incarcerated, attempted robbery, is also not on the statutory list of excluded offenses, filed a petition for a writ of habeas corpus with the Supreme Court of Virginia. After initially opposing the petition, VDOC eventually

---

[6] *Virginia Supreme Court Orders Release of Steven Prease, Who Challenged Earned Sentence Credit Rollback*, ABC 8News WRIC (Jul. 7, 2023), https://www.wric.com/news/virginia-news/virginia-supreme-court-orders-release-of-steven-prease-who-challenged-earned-sentence-credit-rollback/.

reversed course and gave Mr. Puryear and others serving sentences for similar offenses the ESC-2 credits to which they were statutorily entitled, recalculated their sentences, and released those who had already been over-detained. In a subsequent civil lawsuit, Mr. Puryear and 53 other similarly situated individuals recovered nearly $1.6 million from VDOC as compensation for their over-detention resulting from VDOC's failure to properly award them the sentence credits they were statutorily entitled to.

47. Finally, on April 18, 2024, the Supreme Court of Virginia held that VDOC had again violated the plain text of the statute by denying ESC-2 credits to individuals serving sentences for inchoate versions of excluded offenses because the plain language of the statute does not exclude those offenses from eligibility. *Vasquez v. Dotson*, 303 Va. 97, 104 (2024). As a result, the petitioner in that case was entitled to immediate release. Based on this holding, approximately forty other people were also immediately released from VDOC custody.

48. VDOC consistently chose unreasonable interpretations of the earned sentence credit statute even after the Supreme Court of Virginia made clear that the plain language of the statute controlled and was to be given effect.

49. This choice was deliberate and intentional and was made without regard to the rights of people in VDOC custody, because VDOC, like other members of the administration, opposed the expansion of the earned sentence credit program and intended to roll back that expansion.

50. For example, former Governor Glenn Youngkin, explaining a provision he added to Virginia's state budget in 2022 that delayed the implementation of the program, stated: "Everyone knows that, in fact, the original bill wasn't meant to accelerate the release of folks who had committed violent crimes. So the bill had an error in the way it was written versus what was

intended and what my amendment did was correct the error."[7] However, the General Assembly declined to include this provision in the 2024 budget bill, allowing the full program to take effect as originally passed.

51. Through a spokesperson, Youngkin also said that he "continues to express serious concerns about this program and its impact on victims and public safety across the Commonwealth."[8]

52. Miyares made similar statements. In 2024, he issued a press release that described the expansion of the Program as "prioritiz[ing] sentence reduction over public safety, creating opportunities for violent recidivism and leaving victims and communities to bear the tragic consequences."[9]

53. During a press conference, Miyares stated, "We got rid of truth in sentencing for the early release of violent offenders: a criminal-first, victim-last mindset that hurts every Virginian[]."[10]

---

[7] Jackie DeFusco, *550 Inmates Won't Be Released Early This Summer After Last-Minute Vote, VADOC Says*, ABC 8News WRIC (Jun. 27, 2022), https://www.wric.com/news/virginia-news/550-inmates-wont-be-released-early-this-summer-after-last-minute-pivot/.

[8] Charlotte Rene Woods, *Youngkin Wants to Walk Back Earned Sentence Credit Expansions in State Budget*, Virginia Mercury (Jan. 7, 2025), https://virginiamercury.com/2025/01/07/youngkin-wants-to-walk-back-earned-sentence-credit-expansions-in-state-budget/.

[9] Jason Miyares, *News Release: Attorney General Miyares, Violent Crime Victims Call on General Assembly to Fix Virginia's Broken Early Release Law*, Office of the Attorney General (Jul. 2, 2024), https://www.oag.state.va.us/media-center/news-releases/2881-july-2-2025-attorney-general-miyares-violent-crime-victims-call-on-general-assembly-to-fix-virginias-broken-early-release-law.

[10] Attorney General Jason Miyares, *Part 1: AG Miyares, Crime Victims Urge General Assembly to Fix Virginia's Broken Early Release Law*, YouTube, at 27:30-27:40 (Jul. 2, 2025), https://www.youtube.com/watch?v=wQUKxoD8bqY&t=1142s.

**Plaintiff Eric Welch**

54. Plaintiff Eric Welch was over-detained for approximately two months because VDOC denied him sentence credits to which he was entitled under the plain language of the statute between the date of his incarceration upon a final order of conviction and his VDOC-calculated custody responsibility date.

55. Mr. Welch was arrested on October 28, 2022, on charges out of Arlington and Alexandria. He was held in the Arlington County Jail until November 7, 2022, when he was transferred to the Alexandria City Jail. He was held there until he was released on bond on November 10, 2022. He remained out of custody until July 14, 2023.

56. On July 14, 2023, the Arlington County Circuit Court sentenced Mr. Welch to six years of incarceration, with all but 90 days suspended, pursuant to a guilty plea on one charge of possession with intent to distribute cocaine under Va. Code Ann. § 18.2-248 and one charge of possession of a firearm while possessing a controlled substance under Va. Code Ann. § 18.2-308.4. Mr. Welch was taken into custody that same day. As of July 14, 2023, Mr. Welch was incarcerated in a correctional facility following entry of a final order of conviction by the Arlington court. Under Va. Code Ann. § 53.1-202.3(B), Mr. Welch was eligible to earn 15 sentence credits for every 30 days served on this active sentence.

57. After being taken into custody on July 14, 2023, Mr. Welch was held at the Arlington County Jail until August 15, 2023, when he was transferred back to the Alexandria City Jail.

58. On August 10, 2023, the Alexandria Circuit Court sentenced Mr. Welch on each of three additional charges: two counts of possession with intent to distribute under Va. Code Ann. § 18.2-248, and one count of possession of a controlled substance while possessing a firearm

under Va. Code Ann. § 18.2-308.4. He was sentenced to five years on each charge, with all suspended except for one year and two months on the conviction for possession with intent to distribute. These sentences ran consecutively with his sentences on his Arlington convictions. Under Va. Code Ann. § 53.1-202.3(B), Mr. Welch was eligible to earn 15 sentence credits for every 30 days served on this active sentence. As of August 10, 2023, Mr. Welch was incarcerated in a correctional facility following entry of a final order of conviction by the Alexandria court.

59. Mr. Welch maintained Class Level 1 for the entire duration of his incarceration. Under Va. Code Ann. § 53.1-202.3(B), Mr. Welch was therefore eligible to earn 15 sentence credits for every 30 days served on his active sentences, and VDOC was required to award those credits. However, VDOC withheld ESC-2 credits until Mr. Welch's CRD, when it formally "classified" Mr. Welch, on February 21, 2024. As a result, Mr. Welch earned only 2.25 credits for every 30 days served, instead of 15 credits for every 30 days served, from the dates of his sentencings until February 21, 2024. In other words, Mr. Welch received only 15 percent of the credits to which he was entitled during these seven months.

60. Because VDOC withheld Mr. Welch's statutorily mandated sentence credits from July 14, 2023, and August 10, 2023, respectively, to February 21, 2024, Mr. Welch spent approximately two months in custody after he should have been released. Had VDOC correctly calculated Mr. Welch's earned sentence credits from the date of his incarceration following the entry of a final order of conviction as mandated by Va. Code Ann. § 53.1-202.3(B), he should have been released on or about May 14, 2024.[11]

---

[11] This calculation could be done as follows: (1) Mr. Welch's sentence on his Arlington convictions was 90 days. Subtract 13 days of jail credit, resulting in a 77-day sentence to serve. 77 days multiplied by 66.67% (reflecting 15 days of sentence credit for every 30 days served) equals 51 days. He began serving this sentence on July 14, 2023, and would have finished serving it on September 3, 2023. (2) Mr. Welch's sentence on his Alexandria convictions was 14 months

61. For several months after his sentencing, Mr. Welch tried to obtain his Legal Update Sheet from VDOC. This standard form is used to notify prisoners of the length of the sentences they are currently serving, any jail credit they have received for being incarcerated pre-trial, their eligibility for the earned sentence credit or other good time programs, and a projected "good time release date," which factors in the original sentence, any jail credits, and the maximum number of sentence credits that could be earned over the length of the sentence. The Legal Update Sheet also lists the individual's "custody responsibility date," *i.e.*, the date that VDOC deems the individual to have begun earning credits under § 53.1-202.3(B).

62. In around December 2023 or January 2024, while he was incarcerated in the Alexandria City Jail, Mr. Welch's fiancée sent a written request to Court and Legal seeking a copy of his Legal Update Sheet. She did not receive any response.

63. On February 28, 2024—more than six months after his sentencing in Alexandria—Mr. Welch received a copy of his Legal Update Sheet from VDOC, attached as Exhibit A.

64. Mr. Welch's Legal Update Sheet reflected a custody responsibility date of February 21, 2024, thirty adjusted discharge days, and a projected good time release date of July 16, 2024.

65. Mr. Welch believed that VDOC had improperly calculated his sentence because, by delaying the date on which he began earning sentence credits, it had not given him all of the sentence credits to which he was statutorily entitled, resulting in a later release date. He and his

---

to serve, or 426 days. Multiplying 426 days by 66.67% equals 284 days to serve. Beginning this sentence on September 3, 2023, he would have finished serving it on June 13, 2024. Applying 30 adjusted discharge days to that date (while adjusted discharge days are not defined in statute or policy, as a matter of practice, VDOC provides 28-30 adjusted discharge days to most people in its custody, allowing them a slightly earlier release with a confirmed release plan), Mr. Welch should have been released on May 14, 2024.

fiancée each sent another written inquiry to VDOC's correspondence unit questioning his projected good time release date.

66. Mr. Welch subsequently received an unsigned letter dated March 4, 2024, attached as Exhibit B, from VDOC's correspondence unit that did not explain its calculation of Mr. Welch's release date, but simply asserted that his Legal Update Sheet "accurately reflects all applicable jail credits, to include Adjusted Discharge Days, class level assignment, good time previously earned and good time projected to be earned at the current class level as outlined in Operating Procedure 830.3, *Good Time Awards*."

67. In around March 2024, his counselor at the Alexandria City Jail attempted to call Court and Legal on Mr. Welch's behalf, but that office hung up on him without providing any substantive information.

68. Mr. Welch served his entire sentence at the Alexandria City Jail and was released on July 16, 2024. He remains on supervised probation pursuant to his sentencing orders.

69. By over-detaining Mr. Welch, Defendants violated his clearly established statutory and constitutional rights. Mr. Welch experienced the injuries that are typical and commensurate with being detained for longer than one is legally supposed to be, such as emotional distress and pain and suffering, including the pain and anxiety of prolonged separation from his loved ones; an injury to dignity associated with a prolonged loss of liberty; and financial hardship and lost economic opportunities.

**Plaintiff Sittichok Weerapunyanont**

70. Plaintiff Sittichok Weerapunyanont was over-detained for approximately two months because VDOC denied him sentence credits to which he was entitled under the plain language of the statute between the date of his incarceration upon a final order of conviction and

his VDOC-calculated custody responsibility date.

71. Plaintiff Sittichok Weerapunyanont was taken into custody on pending charges on February 13, 2023, and was held without bond in the Chesapeake City Jail thereafter.

72. On January 9, 2024, Mr. Weerapunyanont pled guilty and was sentenced in Chesapeake Circuit Court to five years of incarceration with two years and six months suspended on one count of solicitation to commit robbery under Va. Code Ann. §§ 18.2-58 and 18.2-29. He was also sentenced to twelve months, all suspended, on one misdemeanor count of stalking under Va. Code Ann. § 18.2-60.3.

73. On July 29, 2024, Mr. Weerapunyanont was sentenced in the Virginia Beach Circuit Court to one month to serve on a misdemeanor stalking conviction under Va. Code Ann. § 18.2-60.3. Pursuant to Va. Code Ann. § 53.1-116, he was eligible to earn one good conduct credit for each day served on this sentence. Mr. Weerapunyanont maintained good conduct while serving this sentence.

74. Mr. Weerapunyanont maintained Class Level 1 for the entire duration of his incarceration in VDOC custody. Under Va. Code Ann. § 53.1-202.3(B), Mr. Weerapunyanont was therefore eligible to earn 15 sentence credits for every 30 days served on his active sentence beginning on January 9, 2024, and VDOC was required to award those credits. However, VDOC did not begin awarding Mr. Weerapunyanont ESC-2 credits until July 30, 2024, his CRD. As a result, Mr. Weerapunyanont earned only 2.25 credits for every 30 days served, instead of 15 credits for every 30 days served, for that period of approximately six and a half months.

75. Because VDOC failed to award Mr. Weerapunyanont earned sentence credits at the rate of 15 credits for every 30 days served beginning on the date of his incarceration following the entry of a final order of conviction, but instead delayed Mr. Weerapunyanont's eligibility to

earn those credits until his CRD on July 30, 2024, Mr. Weerapunyanont spent approximately an additional two months in custody. Had VDOC correctly calculated Mr. Weerapunyanont's earned sentence credits from the date of his incarceration following the entry of a final order of conviction, he should have been released on or about December 31, 2024.[12]

76. Mr. Weerapunyanont remained in the Chesapeake City Jail following his sentencings until approximately October 11, 2024, when he was transferred to Nottoway Correctional Center, a VDOC facility.

77. After his sentencing, Mr. Weerapunyanont did not understand why he was not being transferred to a VDOC facility to serve the remainder of his sentence. He made various efforts to find out why he was not being transferred, including writing letters to VDOC's Court and Legal section, having his sister call that office on his behalf, and asking his attorney for information. He received only a generic response from VDOC to his written inquiry and no other information.

78. Once he arrived at Nottoway Correctional Center, Mr. Weerapunyanont requested and received for the first time a copy of his Legal Update Sheet, attached as Exhibit C, which reflected a custody responsibility date of July 30, 2024, thirty adjusted discharge days, and a projected good time release date of February 27, 2025.

[12] This calculation could be done as follows: Mr. Weerapunyanont accrued 330 days of jail credit while incarcerated prior to his conviction and sentencing. During that time, he earned 25 days of jail sentence credits, for a total jail credit of 355 days. His felony sentence from the Chesapeake Circuit Court was two years and six months to serve, or 913 days. Subtracting the jail credit, that equals 558 days. Multiplying that by 66.67% (reflecting 15 days of sentence credit for every 30 days served) equals 372 days to serve. From January 9, 2024, Mr. Weerapunyanont would have finished serving that sentence on January 15, 2025. He also had a sentence of 30 days to serve on a misdemeanor conviction from the Virginia Beach Circuit Court, on which he earned one good conduct credit for every day served, resulting in 15 days to serve. *See* Va. Code Ann. § 53.1-116. He would have finished serving that sentence on January 30, 2025. Applying 30 adjusted discharge days to this date, he should have been released on or about December 31, 2024.

79. Upon reviewing his Legal Update Sheet, Mr. Weerapunyanont believed that VDOC had incorrectly calculated his good time release date by awarding him fewer earned sentence credits than he should have received. He wrote a letter to VDOC's Court and Legal section to request a correction but did not receive any response.

80. On or around December 5, 2025, Mr. Weerapunyanont was transferred to St. Brides Correctional Center, a VDOC facility, where he would serve the remainder of his sentence.

81. In January 2025, Mr. Weerapunyanont submitted a written complaint through VDOC's grievance process complaining that he should have begun earning sentence credits at a rate of 15 credits for every 30 days served as of the date of his sentencing. He did not receive a written response; instead, a counselor at the prison verbally advised him that this matter could not be addressed through the grievance process, and that Mr. Weerapunyanont should write to Court and Legal. Mr. Weerapunyanont then wrote another letter to Court and Legal setting out this complaint. He eventually received a response letter dated January 23, 2025, attached as Exhibit D, which concluded that his projected good time release date "accurately reflects all applicable jail credits, to include Adjusted Discharge Days, class level assignment, good time previously earned and good time projected to be earned at the current class level … ."

82. Mr. Weerapunyanont was released on February 27, 2025.

83. By over-detaining Mr. Weerapunyanont, Defendants violated his clearly established statutory and constitutional rights. As a result, Mr. Weerapunyanont experienced the injuries that are typical and commensurate with being detained for longer than one is legally supposed to be, emotional distress and pain and suffering, including the pain and anxiety of prolonged separation from his loved ones; an injury to dignity associated with a prolonged loss of liberty; and financial hardship and lost economic opportunities.

## CLASS ALLEGATIONS

84. Plaintiffs Welch and Weerapunyanont bring this suit as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) on behalf of themselves and similarly situated individuals. VDOC's failure to implement the Program's statutory mandate, and its decision to withhold credits based on an arbitrary policy, affects not just these Plaintiffs, but hundreds if not thousands of other eligible people who have served time in VDOC custody. Plaintiffs request this Court certify a class pursuant to Fed. R. Civ. P. 23(b)(3) consisting of individuals convicted of offenses eligible for sentence credits under Va. Code Ann. § 53.1-202.3(B), whose CRD is later than the date of incarceration in any correctional facility following the entry of a final order of conviction by the committing court, and who have been over-detained as a result.

85. The Plaintiffs are members of the class they seek to represent. The class asserts claims under 42 U.S.C. § 1983 and meet the requirements of Fed. R. Civ. P. 23(a) and (b) as follows:

a. Numerosity – Fed. R. Civ. P. 23(a)(1): Joinder of all class members is impracticable because of the size of the class. While the exact size of the class is not presently known to Plaintiffs, the class results from the application of a policy that VDOC applies to every state-responsible prisoner who is eligible for earned sentence credits and is easily ascertainable via information in VDOC's possession, custody, and control. The average daily population across VDOC facilities in October 2025 was more than 20,000 people. It is likely that some significant percentage of people currently incarcerated or recently released from incarceration meet the proposed class definition.

b. Commonality – Fed R. Civ. P. 23(a)(2) and 23(b)(3): The claims raised on behalf of

the class raise common questions of law and fact that predominate over questions affecting only individual members. All class members were subjected to the same policy: denying sentence credits to otherwise eligible individuals for the period between the person's incarceration in any correctional facility following entry of a final order of conviction by the committing court, and their arbitrarily assigned custody responsibility date. All class members have been subjected to this policy even after VDOC knew or should have known that they were entitled to sentence credits as provided by statute. Other common questions of fact and law include:

i. How Defendants developed the policy at issue;

ii. What roles individual Defendants played in developing and implementing that policy;

iii. Whether Defendants knew of, yet recklessly disregarded, the risk that the policy would result in over-detention;

iv. Whether Defendants' policy and practice of denying statutorily mandated sentence credits violated the substantive due process protections of the Fourteenth Amendment;

v. Whether the statutory and/or constitutional rights at issue were clearly established at the time of Defendants' actions.

c. Typicality – Fed R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of the class. They were eligible to participate in the Program but were subject to VDOC's policy and practices of denying sentence credits during the period that they were incarcerated between entry of a final order of conviction and VDOC's assignment of a custody responsibility date, prolonging their period of incarceration, in violation of their legal

rights. As a result, they suffered injuries typical of and common to the class, including the deprivation of their constitutional rights, an injury to dignity as a result of prolonged loss of liberty, emotional distress, pain and suffering, and economic injury, including the loss of economic opportunity.[13]

d. Adequacy of Representation – Fed. R. Civ. P. 23(a)(4): Plaintiffs and their counsel will fairly and adequately represent the interests of the class. Plaintiffs have no interest that is antagonistic to the interests of the class, and class counsel have extensive experience litigating complex civil rights matters, including class actions, in federal court.

e. Superiority – Fed. R. Civ. P. 23(b)(3): A class action is superior to other available methods for adjudicating this matter. Class members are either incarcerated or recently released from incarceration and may face logistical and financial obstacles in bringing individual litigation. Plaintiffs are unaware of any significant litigation already begun on this issue. Because common issues of fact and law predominate in this action, and the class is numerous, a class action is a superior vehicle to resolve these claims than a multitude of individual lawsuits.

## CAUSES OF ACTION

## COUNT 1

**Violation of the Fourteenth Amendment (42 U.S.C. § 1983)**
**Substantive Due Process**

86. Plaintiffs incorporate by reference all allegations contained in paragraphs 1-85.

87. Plaintiffs have a substantive due process interest in their physical liberty and

[13] Courts have repeatedly held that injuries associated with over-detention can be quantified and redressed on a class-wide basis. *See*, *e.g.*, *Betances v. Fischer*, 304 F.R.D. 416, 431 (S.D.N.Y. 2015); *Betances v. Fischer*, 2024 WL 3848485, at *5-7 (S.D.N.Y Aug. 16, 2024); *Aichele v. City of Los Angeles*, 314 F.R.D. 478, 496 (C.D. Cal. 2013).

freedom from unlawful incarceration.

88. Virginia's earned sentence credit program creates a liberty interest protected by the Fourteenth Amendment.

89. By failing to award Plaintiffs and those similarly situated sentence credits that they had earned, even though Defendants knew that they were legally entitled to them, Defendants acted with deliberate indifference to the Plaintiffs' and class members' substantive due process right to timely release.

90. Plaintiffs and class members were harmed by the violation of their due process rights, as well as by each day of unauthorized and unnecessary incarceration.

## **REQUEST FOR RELIEF**

91. WHEREFORE, Plaintiffs respectfully pray that the Court grant them the following relief:

a. Certify a class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b. Award Plaintiffs Welch and Weerapunyanont and class members nominal, compensatory, and punitive damages in an amount to be determined by a jury that would fully compensate them for the injuries caused by the Defendants;

c. Award costs and reasonable attorneys' fees incurred in this action as provided in 42 U.S.C. § 1988(b); and

d. Order such other relief as this Court deems just and appropriate.

92. Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all issues triable as of right.

Respectfully submitted:

/s/ Geri Greenspan
Geri Greenspan (VSB No. 76786)
Vishal Agraharkar (VSB No. 93265)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF VIRGINIA
P.O. Box 26464
Richmond, VA 23261
(804) 491-8584
ggreenspan@acluva.org
vagraharkar@acluva.org

Liz Lockwood (*pro hac vice* application forthcoming)
Kathryn Ali (VSB No. 97966)
ALI & LOCKWOOD LLP
501 H St. NE, Suite 200
Washington, D.C. 20002
(202) 651-2475
Liz.lockwood@alilockwood.com
Katie.ali@alilockwood.com

*Counsel for Plaintiffs*